

**Driving progress through partnership**

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

**Jennifer L. Achilles**
Direct Phone: +1 212 521 5412
Email: jachilles@reedsmith.com

October 22, 2019

**VIA ECF**

Hon. Denise Cote
United States District Court
Southern District of New York
500 Pearl Street, Room 1910
New York, New York 10007

Re:   *United States v. Nikas, et al.*; 19 CRIM 716

Dear Judge Cote:

We submit this renewed application for bail on behalf of defendant Telemaque Lavidas. We have spoken with counsel for the government regarding this renewed application and, as of the time of this filing, they continue to oppose pretrial release.

Mr. Lavidas is a US citizen and a graduate of Columbia University whose family has a three-bedroom apartment on the UES where he can reside with his wife, daughter, and two sisters pending trial. As explained below, and notwithstanding the government's representations at the defendant's October 18, 2019 bail hearing, the US-Greece extradition treaty expressly allows for Mr. Lavidas's extradition if necessary because he is not a registered Greek citizen. Mr. Lavidas's wife, who is pregnant with their second child, is also prepared to surrender her travel documents. Mr. Lavidas has substantial ties to New York, with his two sisters, closest friends, and several extended family members living here. Mr. Lavidas respectfully requests that this Court grant him pretrial release pursuant to the conditions above and those recommended by Pretrial Services, as well as a $500,000 personal recognizance bond co-signed by three financially responsible persons who have significant ties to New York and hold moral suasion over Mr. Lavidas.

**Factual Background**

On Friday October 18, 2019, following Mr. Lavidas's arraignment and plea of not guilty, the Court held a bail hearing. Pretrial Services recommended Mr. Lavidas's release subject to the following conditions to secure his continued appearance: supervision by Pretrial Services; travel restricted to SDNY/EDNY; surrender of travel documents and no new applications; GPS monitoring; and no contact with co-defendants or witnesses other than with counsel present. The government opposed Mr. Lavidas's pretrial release. The government argued that Mr. Lavidas poses a flight risk, notwithstanding his US citizenship, because members of his family and his co-defendant live in Greece and Mr. Lavidas could flee to Greece and seek immediate citizenship to avoid extradition. The government also argued that Mr. Lavidas did not work in New York or have significant ties here. The Court ordered pretrial detention without prejudice to submission of a renewed application including a substantial bail package.

**Argument**

Mr. Lavidas has no criminal history. He was born in New York and attended Columbia University. He graduated in 2003 with a degree in Economics. Mr. Lavidas has lived an exemplary life. From 2003 until 2008, Mr. Lavidas resided in Manhattan and worked in New Jersey at Lavipharm Laboratories, Inc. After that, he continued to live in New York and founded a start-up company in the nutrition/snacks industry. Since 2018, Mr. Lavidas has been working in a business development role for Lavipharm Laboratories (a French company) and its affiliates. Apart from allegedly tipping his co-defendant in 2013 and 2015, there are no allegations that Mr. Lavidas engaged in any illegal behavior or obstructed the government's investigation in any way. Indeed, on April 6, 2018, Mr. Lavidas was notified by Google that the FBI (from the Southern District of New York) had requested and obtained his email pursuant to court order, yet he and his family remained in New York and there is no suggestion they contemplated fleeing the jurisdiction.

Mr. Lavidas's family has a residence in Manhattan. Mr. Lavidas resides with his 14-month old daughter (a US citizen); his wife (a green-card holder) who is pregnant with the couple's second child (due next spring); and his two sisters who are US citizens and currently in graduate school.

There is a strong presumption against pretrial detention as codified in the Bail Reform Act, 18 U.S.C. § 3141, *et seq*. A**s** there is no suggestion that Mr. Lavidas is a danger to the community, and the crime of which he has been charged is not of the limited type where pretrial detention is presumed to be necessary, the only reason for his continued detention is the concern that Mr. Lavidas would flee the United States. In deciding whether to order defendant's pretrial detention based on risk of flight, court must consider the record before it in light of factors that include (1) the nature and circumstances of offense charged, (2) the weight of evidence against defendant, (3) the history and characteristics of defendant, including, among other factors, family ties, employment, financial resources, past conduct, criminal history; and (4) the nature and seriousness of danger to any person or the community that would be posed by defendant's release. 18 U.S.C. § 3142(g).

The government's burden is to establish by a preponderance of the evidence that Mr. Lavidas is a risk of flight and, here, the weight of the evidence is such that the government cannot meet this burden when its strongest argument turned on an incorrect interpretation of the US-Greece extradition treaty.

<u>The US-Greece Extradition Treaty Expressly Allows Mr. Lavidas's Extradition if Necessary</u>

At Mr. Lavidas's bail hearing on October 18, 2019, the government speculated that Mr. Lavidas, who is not currently a registered Greek citizen, could flee to Greece, where his mother and father reside, and obtain "easy citizenship" to avoid extradition because Greece does not extradite its own nationals. However, a review of the US-Greece extradition treaty shows that is impossible. Article VIII of the treaty, attached hereto as Exhibit A, states:

> Under the stipulations of this Treaty, neither of the High Contracting Parties shall be bound to deliver up its own citizens, except in cases where such citizenship has been obtained after the perpetration of the crime for which extradition is sought. The State appealed to shall decide whether the person claimed is its own citizen.

Thus, although Greece will not extradite its own nationals, there is a clear exemption if the person obtains Greek citizenship after the perpetration of the crime for which extradition is sought. Here, Mr. Lavidas does not have Greek citizenship with its accompanying rights and privileges, and his

registration would require submission and approval of documentation before extradition rights could be granted. Accordingly, any suggestion that Mr. Lavidas can flee to Greece to avoid extradition is false.

Mr. Lavidas also stands ready to waive any rights he may have not to be extradited to the United States under any other extradition treaty or local law. Mr. Lavidas's wife is also willing to surrender her travel documents as a condition of Mr. Lavidas's release.

<u>Nature and Circumstances of the Offense / Weight of Evidence</u>

Mr. Lavidas is named in nine counts of a thirty-one count indictment alleging an insider trading conspiracy. Mr. Lavidas is alleged to have obtained material nonpublic information from his father, a then-member of the board of directors of Ariad Pharmaceuticals, and passed it along to his co-defendant Georgios Nikas on two occasions in 2013 and one occasion in 2015. Mr. Nikas (but not Mr. Lavidas) is alleged to have traded on the information and profited $1.95 million. Mr. Lavidas is alleged to have received an unspecified amount of money from Mr. Nikas as a result of his participation. Mr. Nikas is charged with several additional counts of insider trading completely unrelated to Mr. Lavidas, in which Mr. Nikas (but not Mr. Lavidas) is alleged to have made "millions of dollars of profits."

Mr. Lavidas' role the charged conspiracy, however, appears relatively small given the scope of Mr. Nikas' alleged trading activity and the number of other co-conspirators placed in three global investment banks.. According to the government's indictment, the other co-conspirators were given "over $1 million of benefits, including cash trips and luxury watches." (*Id.* ¶ 34). In contrast, the government simply alleges that Mr. Lavidas was paid "at various times during the scheme." (*Id.* ¶ 30). Moreover, there are no allegations in the indictment suggesting that Mr. Lavidas was aware of, much less participated in, Mr. Nikas' alleged extensive conspiracy. By the government's own indictment, Mr. Lavidas played a minor role in conduct that occurred between four and six years ago.

On the same day that Mr. Lavidas was arrested, Mr. Bryan Cohen, a Goldman Sachs investment banker, was also arrested on insider trading charges related to Mr. Lavidas's co-defendant Mr. Nikas. Messrs. Cohen and Nikas were also named as defendants in a civil enforcement action brought by the Securities and Exchange Commission in the SDNY on October 18, 2019. Mr. Lavidas is **not** mentioned or named as a defendant in the SEC complaint, which alleges illicit gains of $2.6 million. Following Mr. Cohen's Initial Appearance held before Magistrate Judge Aaron on October 18, 2019, Mr. Cohen was released on a $250,000 personal recognizance bond secured by three co-signers, as well as other conditions to secure his continued appearance.

Based on the information currently known, the weight of evidence against Mr. Lavidas is not strong. In fact, two of the nine counts against Mr. Lavidas are likely time barred as they are for wire fraud activities that allegedly occurred in 2013 (Indictment ¶ 50). The last act alleged in the Indictment as to Mr. Lavidas is said to have occurred in July 2015, well over four years ago (*Id.* ¶ 27). Given that the Court has set a trial date approximately nine months from now, which may be extended given the uncertain extradition status of his co-defendant, Mr. Lavidas is facing a significant amount of pretrial detention for a non-violent crime in which he is not the primary target.

<u>Familial and Personal Ties to New York City</u>

Mr. Lavidas's pregnant wife and 14-month old daughter are currently residing in Manhattan and intend to stay here. Caterina Lavidas, Mr. Lavidas's wife, holds an Italian passport and a US green card,

both of which she is willing to surrender as a condition of release. Mr. Lavidas will not flee the country and leave his wife and two children behind.

Mr. Lavidas's twin sisters are US citizens who reside in Manhattan. Danae Alexandra Lavidas graduated in June 2019 from UCLA with a degree in Psychology, and is currently enrolled at Columbia University's post baccalaureate pre-medical program. Phaedra-Eleni Lavidas also graduated in June 2019 from UCLA, and is currently in graduate school at New York University studying Integrated Marketing. Mr. Lavidas's great uncle also resides in Manhattan. Dr. Constantine Anagnostopoulos is a cardiothoracic surgeon at Mt. Sinai hospital and on the faculty at Columbia University. All three of these family members hold moral suasion over Mr. Lavidas and have indicated that they will ensure that Mr. Lavidas meets the conditions of his pretrial release including continued court appearances.

Mr. Lavidas's closest friends are also US citizens who reside in New York City. Mr. James Christopoulos is a Managing Director of CVC Capital Partners, a global private equity firm. Mr. Christopoulos met Mr. Lavidas at Columbia University twenty years ago where they were roommates. They remain very close and have mutual friends in New York City. Mr. Christopoulos lives in midtown Manhattan with his family. In addition to his work at CVC Capital, Mr. Christopoulos is on the board of the New York youth-focused charity called Youth, Inc. Mr. Romanos Fessas is a graduate of Columbia University, where he first met Mr. Lavidas. Mr. Fessas resides in Brooklyn and works at his own software company. Mr. Fessas and Mr. Lavidas have remained very close friends over the years.

Mr. Charis Dimaras is the brother-in-law of Mr. Lavidas's sister. He is a US citizen who resides in Ithaca, New York. He is a Professor of Music at Ithaca College where he has taught for over twenty years. He holds a Master's Degree from the Julliard School and a Doctorate Degree from the Manhattan School of Music. Mr. Dimaras travels to New York City on a regular basis.

Mr. Christopoulos, Mr. Fessas, and Mr. Dimaras all hold moral suasion over Mr. Lavidas and have agreed to co-sign a $500,000 bond to secure Mr. Lavidas's pretrial release.

## Conclusion

Considering that Mr. Lavidas is not a registered Greek citizen, and that the US-Greece treaty will secure Mr. Lavidas's extradition if needed; and considering that Mr. Lavidas's wife will surrender her travel documents; and considering Mr. Lavidas's small role in an insider trading scheme where the alleged illegal profits are less than $2M; and considering Mr. Lavidas's deep family and social ties to the District as explained above, Mr. Lavidas respectfully requests that his application for pretrial release be granted subject to a $500,000 bond co-signed by three financial responsible persons and the other conditions imposed by Pretrial Services.

Respectfully submitted,

**REED SMITH LLP**

By: /s/ Jennifer L. Achilles
    Jennifer L. Achilles
    jachilles@reedsmith.com
    A. Scott Bolden
    abolden@reedsmith.com
    Eric H. Sussman
    esussman@reedsmith.com

599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450

*Attorneys for Telemaque Lavidas*